ELLIS, Judge.
On Feb. 24, 1952 plaintiff Martin Troy was driving his car in a southerly direction on a graveled highway, Louisiana Highway No. 5, from Whitehall toward Opelousas, Louisiana, and seated beside him was his brother, Ben Troy, and in the rear seat were Mrs. Felix Blanchard and her daughter, Lydia. When he neared the junction of a parish road with Highway 5, he saw the car driven by the defendant approaching on this Parish road. The two roads formed a T intersection.
Plaintiff contends that when he was within 90 feet of the junction he saw the defendant car stopped on a bridge located within several feet of the junction, whereupon he blew his horn and continued forward at a speed of 30 to 35 miles per hour, and when he was approximately 30 or 40 feet from the defendant the latter drove into Highway 5 into plaintiff’s lane of travel; that plaintiff applied his brakes, pulled to the left and due to the fact that the car began to slide in the loose gravel, released his brakes and applied them more slowly until he was near the ditch on the left hand side, when he veered his car back to the right and the collision occurred. On the other hand it was the contention of the defendant that he came upon the bridge and stopped, started to make .the turn and then heard the plaintiff blow his horn, and that he immediately applied his brakes and his car was stopped with the front end .extending approximately 3 feet into the plaintiff’s lane of travel on La. Highway 5.Defendant further contends that the plaintiff could have stopped his car or passed to the left and front of his car and thereby avoided the collision.
As a result of the collision plaintiff’s insurance company paid him all except the $50 deductible under the policy and he is, therefore, suing only for this amount. In the record is a .complete subrogation of all rights and claims which the plaintiff had in this matter to his insurance company, plaintiff herein; who is seeking to recover $213.28 which is the full amount it paid to the plaintiff and which naturally did not include the $50 deductible.
To the petition defendant filed exceptions of no right or cause of action based upon the proposition that where an automobile owner assigns to the insurer all of its claims for damages arising out of an automobile collision, the insurer was entitled to recover the full amount required to repair the automobile, including the $50 deductible paid by the owner of the automobile, and he cites in support thereof General Exchange Insurance Corporation v. Kean’s, Inc., La.App., 184 So. 410; General Exchange Insurance Corporation v. Carp, La.App., 176 So. 145.
*72 The exceptions of .no cause or right of action are not well founded. If the defendant is liable it is for the total amount of the damages 'proven on the trial of the case. It is true that there is a valid assignment or subrogation by the plaintiff Troy to the .plaintiff insurance company, 'but both are before the Court as plaintiffs and there is no reason, if plaintiffs are, successful, why judgment should not be rendered for the deductible amount of $50 in favor of Troy and a judgment for-the remainder in favor of the plaintiff insurer.
After trial the District Court rendered judgment, dismissing plaintiff’s suit and it is now befo're this Court of Appeal.
The record in'this case reveals that at-approximately 4 p. m. on February 24, 1952 the assured, Martin Troy was driving his automobile on Louisiana Highway Number 5, and when nearing a T junction formed by a parish road and Highway 5, he was forced to stop in order to avoid colliding with a mule in the road. After starting again he had- attained a speed of approximately thirty to thirty-five miles per hour and when within some ninety feet .of the junction, he, saw the defendant’s -car stopped on 'the bridge which is located several feet back from the intersection of the parish- road and the gravel highway on which he was traveling, and he then blew his horn as a warning to the defendant. There is no dispute- in the facts to this point but from this point on they are apparently in sharp dispute or conflict as far-as the verbal testimony' is concerned.
Plaintiff testified that after he had blown his horn and had traveled to within thirty or forty feet of the junction, the defendant pulled onto the main road and that he immediately applied his brakes, and pulled to the left; that due to the loose gravel his car began to slide and he, therefore, released the brakes and reapplied them in a slower fashion until he saw that he was going off on the left side into the ditch and he then steered his car back to the right. It was at this time, according to his testimony, that the defendant had gotten over into the highway left of.the center line where plaintiff struck him with the right end of the bumper and the side of his fender. He testified that the right front of his car locked into the left front part of the bumper and fender of defendant’s car. According to the preponderance of the testimony, the actual impact occurred either near the center or to the left thereof of Louisiana Highway Number 5. Whether it took place on the left side or slightly to the right of the center of the highway is immaterial, although much is made of this discrepancy in plaintiff’s testimony by the defendant. The plaintiff also testified that immediately after the accident the defendant stated that he had no insurance and that he would pay plaintiff the $50 deductible if the latter would admit1 liability.
The plaintiff is corroborated in his testimony by that of Mrs. Felix Blanchard and Ben Troy who were riding in the car with him at the time of the accident. This latter witness testified that he saw the defendant coming off of the bridge near the junction of the two highways and that he seemed to stop, and just as their car got about 30 feet from the defendant, the latter proceeded into, the. highway and the collision occurred. The plaintiff and the eye witnesses who were in his car all testified that defendant did not make a sharp right turn but came oút ’ into the middle of the highway. These eye witnesses also thought that the impact occurred more to the left but near the center of Louisiana Highway 5.
Opposed to the testimony of the plaintiff and his eye witnesses is that of the defendant and his guests who were also eye witnesses. According to a Mr. Ay-mond, who was riding in the car with the defendant, just as the front wheels of the defendant’s car 'Came off' the bridge and into the graveled' Highway 5, he heard the horn of the plaintiff’s car blowing and the defendant stopped his car "right there.” He testified that the plaintiff’s car kept coming and instead of passing the front of their car as he expected, it ran into defendant’s *73 car. This witness also testified that although the defendant had stopped his car “dead” with only the front part extending into Highway 5, that as a matter of fact, the defendant had plenty of time to have completed his right turn and proceed on ahead of the plaintiff had he so desired.' According to this witness’s testimony, the plaintiff was coming “a good 60 miles.” This witness’s estimation of the speed is evidently in error as the cars moved' very little after the collision and were still hooked together at the right end of plain-' tiff’s bumper and left end of defendant’s bumper. It was further this witness’s opinion that at the, time of the impact the plaintiff was going 30 miles per hour. Had he-been making this speed at that time, the accident- would have been much more serious. Even the defendant himself did not think he was going as fast'as between 20 and 30: miles per hour for he stated: “It looks to me I would have more damage on my car if he hit me that much.”
Mrs. Aymond, who was a guest in the car of the defendant, testified in his behalf and stated that the plaintiff “was sure coming 55 or 60”, and that the front wheels of the defendant’s car were approximately 3 feet out into Highway 5 at the time of the collision where he had stopped when he heard the plaintiff’s horn blow.
The wife of the defendant testified that as they reached the bridge adjacent to the junction of the two roads that the plaintiff blew his horn when about a block away, and that the defendant stopped immediately with the front end of his car approximately three’ or four feet into Louisiana Highway 5. This witness further stated that plaintiff: “was on his. right hand side just about in the middle and to me he could have skipped us and all of a sudden he came back to our side and hit the front end of the car.” This is exactly what the plaintiff said he did except that he also applied his brakes. This witness stated that there was enough room for the plaintiff to have passed to the side or front of defendant’s car without a collision. .
The defendant testified that when he arrived at the bridge near the junction of the* parish road and Highway 5 that'it was necessary to stop because theré were bushes and grass and little trees which obstructed a clear view of approaching traffic. He stated in ref'erring to plaintiff’s car that when he stopped, “I see the car "was coming to me kind of far,” and that he started to turn and heard the plaintiff blow his horn and then stated:- “So I just put my brake, hold my feet on the brake,” and that the front end of his car at the time of the collision was about 3 feet in plaintiff’s lane on Highway 5. - 1
As we understand defendant’s testimony, the position of the cars after the collision was approximately as shown by the diagram of the State Trooper who investigated the accident. The plaintiff’s car was in a diagonal position across the road with its right front portion slightly over the center line of the highway and the middle and rear portions completely to the left óf the center line. The left front end of the défendant’s car was near but slightly to the right of the center line and the remainder slanting at an angle toward the right across the right hand lane. According to the diagram all of the defendant’s car was in the right lane of travel with the front end against the center-line, showing that the defendant either had driven his car out in a turning position to the right three or'four feet into Highway. 5, or had been dragged the remainder of the distance, toward the center line. He was no.t dragged • toward the center line as the -plaintiff’s car was traveling from left to right at the moment of the collision and instead of pulling or dragging the defendant’s car toward the center, line ■ it would have forced it to its right or away from the center line. Therefore, if the plaintiff’s car pushed or dragged defendant’s car at all three or four feet, and the two cars were in the position that the defendant, the.plaintiff and. the officer testified they were after ;the wreck, then the front portion of defendant’s car just prior to the collision, must have been ■ slightly across the center line.
The disinterested witness in this case was the police officer who testified on behalf of the- plaintiff. ■ His- testimony is most im *74 portant in arriving at a correct conclusion as to what actually took place a-nd what was the proximate cause of this accident. It was this witness’s testimony that the defendant was pulling out into the road into the plaintiff’s lane of travel and that , the point of impact was on the west side of the center line of Highway 5 which Highway he described as being approximately. 20 feet in width. The officer testified that he talked to the defendant when he arrived there and that the latter stated: “He told me he stopped and didn’t see no. traffic coming so he decided to take off. That’s the exact words he told me, when he started to take off he saw this fellow coming. Evidently it was too late for him to stop turning.” It was also shown that the officer did not put this statement in the report but he positively asserted that that is exactly what the defendant told him at the time and even though the accident had happened almost three years before he well remembered that statement. There is nothing to show that this officer had any interest in this case and, therefore, we have no reason to disbelieve his testimony.
 Considering the entire record, we find the plaintiff was in the neighborhood of 90 feet from the junction of the parish road and Highway S, traveling at a speed of 30 to 35 miles per hour when he saw the defendant’s car stop as it came upon the bridge adjoining Highway 5; that he blew his horn and continued, and when he was within the distance of approximately 30 or 40 feet of the junction of the two roads the defendant began to move out into the plaintiff’s lane of traffic. At this time the defendant created an emergency, and whether there was room in front of the defendant for the plaintiff to pass or not is beside the point. It is clear from the evidence that plaintiff could not stop within this short distance although he was traveling at a moderate, reasonable, legal rate of speed. The plaintiff attempted to pass to the front of the defendant but was unable' to do so, either due to the fact that the defendant’s car had come across into the left lane of traffic as contended by the plaintiff or due to the fact that on the loose gravel the sudden forceful application of plaintiff’s brakes caused plaintiff’s car to skid and it was necessary that he release them and apply them slowly, and in order to avoid going into the ditch on his left he started his car back to the right and the impact took place. The sole proximate cause of this accident was the negligent act of the defendant in proceeding into Louisiana Highway 5 immediately in the face of the approaching plaintiff. It is more or less immaterial as to whether the defendant only came three or four feet into the plaintiff’s lane of travel, as this was sufficient in view of the close proximity of the plaintiff at the time he made this maneuver, which was 30 or 40 feet, to create an emergency, and any action which the plaintiff took in an attempt to avoid the collision would not constitute negligence on his part as he was in no wise responsible for the creation of the emergency.
The contention of counsel for defendant that the latter had pre-empted this intersection is without merit. Under the facts found the law accords no right of pre-emption to the defendant.
As to the quantum plaintiffs admit that they have failed to prove as an item of damages $19.60 for a new tire.
It is therefore ordered that the judgment of the District Court be reversed and that there now be judgment in favor of plaintiff Martin Troy in the full sum of $50 with legal interest from judicial demand and against the defendant Adolph Landos. It is further decreed that there be judgment in favor of the plaintiff, and against the defendant Adolph Landos in the full sum of $193.78 with legal interest from judicial demand until paid. It is ordered that the defendant pay all costs.